IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID E. C.,[1]

    **Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**

Civil Action 1:22-cv-560
Magistrate Judge Chelsey M. Vascura

## OPINION AND ORDER

Plaintiff, David E. C., ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). This matter is before the Court for consideration of Plaintiff's Statement of Errors (ECF No. 8); the Commissioner's Memorandum in Opposition (ECF No. 9); Plaintiff's Reply (ECF No. 12); and the administrative record (ECF No. 5). For the reasons that follow, the Commissioner's non-disability determination is **AFFIRMED,** and Plaintiff's Statement of Errors is **OVERRULED**.

### I.    BACKGROUND

Plaintiff protectively filed his DIB application in June 2020, alleging that he became disabled on May 20, 2020. Plaintiff's application was denied at the initial and reconsideration levels before an Administrative Law Judge ("ALJ") held telephonic hearings on June 17, 2021,

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

and September 14, 2021, and issued an unfavorable determination on October 14, 2021. That unfavorable determination became final on August 28, 2022, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. He submits that remand is warranted because the ALJ failed to find that his mental health impairments were severe. (Pl.'s Statement of Errors 8–10, ECF No. 8.)   Defendant correctly maintains that Plaintiff's contentions of error lack merit. (Def.'s Mem. in Opp'n, 3–10, ECF No. 9.)

## II.     THE ALJ'S DECISION

The ALJ issued her decision on October 14, 2021, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. 12–40.) The ALJ initially explained that Plaintiff met the insured status requirements through December 31, 2025. (R. 17.) At step one of

the sequential evaluation process,[2] the ALJ found that Plaintiff not engaged in substantial gainful activity since his alleged May 20, 2020 onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe, medically determinable impairments: morbid obesity and severe hypertension. (*Id.*) In addition, the ALJ found that Plaintiff's depressive, bipolar and related disorders were medically determinable, but that they were not severe. (R. 18.) At step three, the ALJ further found that Plaintiff did not have a severe impairment or combination of impairments that met or medically equaled a listed impairment. (R. 22.)

The ALJ then set forth Plaintiff's residual functional capacity[3] ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional nonexertional limitations. The

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

>claimant is able to lift and carry up to 20 pounds occasionally and 10 pounds frequently. He is able to stand and/or walk 6 hours per 8-hour day and sit 6 hours per 8-hour day with normal breaks. The claimant can never climb ladders, ropes or scaffolds. He can frequently climb ramps or stairs. The claimant can frequently balance as defined in the Selected Characteristics of Occupations (SCO). He can frequently stoop, kneel, crouch, and crawl. The claimant can perform frequent handling, fingering and feeling bilaterally. He must avoid all exposure to hazards of climbing ladders, ropes or scaffolds

(*Id.*)

At step four, the ALJ relied on testimony from a vocational expert ("VE") to determine that Plaintiff was unable to perform his past relevant work as he had performed it. (R. 33.) At step five, the ALJ again relied on VE testimony to determine that in light of his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform including the representative occupations of marker, routing clerk, and cashier. (R. 1048.) The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from January 1, 2015, through the date of the ALJ's determination. (*Id.*)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

4

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).

Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when determining that his mental health impairments were not severe at step two. Specifically, Plaintiff argues that the ALJ's determination that his mental impairments caused no more than mild limits is not supported by substantial evidence. (Pl.'s Statement of Errors 8–10, ECF No. 8.) This contention of error lacks merit.

At step two of the sequential evaluation, an ALJ considers the "medical severity" of a claimant's medically determinable impairments. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). When assessing the severity of a mental impairment, like depression, an ALJ must

follow a special technique. 20 C.F.R. §404.1520a(a); *Brooks v. Comm'r of Soc. Sec*. 531 F. App'x 636, 641 (6th Cir. 2013). Specifically, an ALJ must rate the degree of a claimant's functional limitation in four broad areas known as the "paragraph B" criteria: the ability to "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 404.1520a(c)(3). An ALJ must rate a claimant in these four areas using a five-point scale: "[n]one, mild, moderate, marked, and extreme." 20 C.F.R. § 404.1520a(c)(4). If the degree of the claimant's limitations are rated as "'none' or 'mild,'" the ALJ will generally conclude that a claimant's impairments are "not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities . . . . " 20 C.F.R. § 404.1520a(d)(1).

In addition, before a claim can proceed from step two to step three, an ALJ must find that a severe impairment meets the duration requirement in 20 C.F.R. § 404.1520(a)(4)(ii), which provides that "[u]nless your impairment is expected to result in death, it must have lasted or be expected to last for a continuous period of at least 12 months." "Where the claimant is applying for DIB, 'the 12-month period may be any period of 12 months, so long as the period starts prior to the expiration of the claimant's insured status. The only requirement is that the 12 months must be consecutive.'" *Bentschneider v. Comm'r of Soc. Sec.*, No. CV 16-12038, 2017 WL 1505120, at *5 (E.D. Mich. Apr. 7, 2017), *report and recommendation adopted*, No. 16-CV-12038, 2017 WL 1476900 (E.D. Mich. Apr. 25, 2017) (quoting Carolyn A. Kubitschek & Jon C. Dubin, *Social Security Disability Law & Procedure in Federal Court* § 2:6 (2017 ed.)); *see also Lyons v. Soc. Sec. Admin.*, No. 00-5361, 19 F. App'x 294, 300 (6th Cir. Sept. 13, 2001).

Plaintiff bears the burden of proving the existence of a severe, medically determinable impairment that meets the twelve-month durational requirement. *See Jones v. Comm'r of Soc.*

*Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012). The United States Court of Appeals for the Sixth Circuit has explained that the step-two inquiry is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (quoting *Farris v. Sec'y of Health & Hum. Servs.*, 773 F.2d 85, 90 n.1 (6th Cir. 1985)). Accordingly, a claimant's burden at step two is "a *de minimis* hurdle in the disability determination process" requiring a claimant to show only that an impairment has more than a minimal impact on his ability to perform work-related functions. *Id*. at 862. Still, an impairment must be both severe and of sufficient duration or there will be a finding of non-disability. 20 C.F.R. § 404.1520(a)(4)(ii).

Moreover, even if an ALJ errs when assessing an impairment's severity at step two, remand is often unnecessary if she finds that a claimant's other impairments are severe. This is because regulations and agency policy require an ALJ to consider all of an individual's impairments, severe and not, when formulating his RFC. 20 C.F.R. § 404.1545(e); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996). The Sixth Circuit has clarified an ALJ's obligation to consider non-severe impairments under SSR 96-8p in *Emard v. Commissioner of Social Security* 953 F.3d 844, 851–52 (6th Cir. 2020). There, the ALJ did not discuss a plaintiff's non-severe impairments when assessing the plaintiff's RFC. Nevertheless, the Court explained that the ALJ's express reference to SSR 96-8p, along with her discussion of the functional limitations imposed by [the plaintiff's] nonsevere impairments at step two," plus the ALJ's indication that she had "considered the entire record and 'all symptoms,'" led the Court to conclude that the ALJ had in fact considered all of the plaintiff's impairments when performing an RFC assessment. Therefore, if an ALJ errs when assessing severity, the pertinent inquiry is whether

7

the ALJ considered the "limiting effects of all [claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity." 20 C.F.R. § 404.1545(e). And whether the ALJ considered the limiting impacts of all impairments can be gleaned from the ALJ's determination as whole. *Emard*, 953 F.3d at 851–52.

Here, at step two, the ALJ found that Plaintiff had one or more severe physical impairments but that his depressive, bipolar, and related disorders were non-severe. (R. 18.) In reaching that determination, the ALJ first discussed the record evidence related to those impairments in detail. (R. 18–21.) The ALJ then considered the four areas that make up paragraph B criteria. (R. 21).

First, the ALJ found that Plaintiff had no limits in the ability to understand, remember, or apply information. (*Id*.) The ALJ wrote as follows:

> Additionally, the claimant's ability to understand, remember, or apply information appears not limited. The claimant testified that he worked as cashier taking and delivering orders. Indeed, he stated that he knew all his customers and they were familiar with him as well. Exhibit 15F/2. During treatment, the claimant exhibited an ability to ask and answer questions while also providing sufficient explanations. Dr. Lester described estimated average intelligence and no difficulty with cognitive testing. In addition, the record makes only general reference to impaired remote memory but no impairment in his recent memory. Exhibit 12F/116.

(*Id*.) As this discussion demonstrates, the ALJ determined that Plaintiff had no limits in this area because, in part, Plaintiff was able to ask and answer questions and provide explanations. (*Id*.) Substantial evidence supports that conclusion. On May 22, 2020, Plaintiff's case worker at Talbot House wrote that Plaintiff was able to assist with updating his individual support plan and contribute to conversations about his daily functioning. (R. 345.) On September 16, 2020, a consultative examiner noted that Plaintiff's ability to "relate" was good. (R. 423–24.) Plaintiff's caseworker noted that Plaintiff was able to assist with updating his outcomes on October 2, 2020. (R. 446.) On April 9, 2021, Plaintiff's caseworker again wrote that Plaintiff was able to assist in

8

updating his plan. (R. 857.) Another consultative examiner noted on May 25, 2021, that Plaintiff answered questions appropriately. (R. 1122.) The following day, a third consultative examiner, George Lester, Psy.D., wrote that Plaintiff was a "credible informant." (R. 1133.)

The ALJ additionally explained that Plaintiff had no limits in the ability to understand, remember, and apply information because, in part, Dr. Lester estimated that Plaintiff had average intelligence and no difficulties with cognitive testing. (R. 21.) Substantial evidence supports that explanation as well. On May 26, 2021, Dr. Lester wrote that Plaintiff appeared to be of average intelligence and noted that Plaintiff had completed college but never been enrolled in any special education classes. (R. 1137.) Dr. Lester further wrote that Plaintiff retained six digits forward, five digits backwards, and four out of five objects after five minutes. (R. 1134.) Plaintiff was also able to complete simple calculation tasks and a serial 7 backwards and forwards. (*Id*.)

Second, the ALJ found that Plaintiff had only mild limits in the ability to maintain social functioning. The ALJ explained as follows:

> The claimant is no more than mildly restricted in his ability to maintain social functioning. There is no objective evidence of problems getting along with coworkers or customers during prior employment. However, he described difficulty interacting with his supervisor. His prior activity as a cashier confirms considerable abilities under this domain. The claimant also appeared to have close relationship with his family, although he did not endorse friendships or romantic relationships. Moreover, the claimant consistently interacted well with his clinicians, who generally noted that the claimant was pleasant and cooperative.

(*Id*.) As this discussion demonstrates, the ALJ determined that Plaintiff had only mild limits in this area because, in part, Plaintiff had a close relationship with family members. (*Id*.) Substantial evidence supports that explanation. Plaintiff regularly reported that he received financial support from his family (R. 361, 365, 116, 442, 444, 452) and that his father and brother helped him pay rent or bills (R. 353, 456, 851). On March 25, 2021, Plaintiff reported that he had positive connections with his friends and family and that he had a strong support

9

system. (R. 868.) On May 26, 2021, Plaintiff reported to Dr. Lester that he would call his mother to talk, and that he had an older male friend with whom he would also talk. (R. 1137.) Dr. Lester wrote that although Plaintiff reportedly had a limited network of friends and did not date, Plaintiff had no conflicts with his friends or family. (*Id*.)

The ALJ additionally explained that Plaintiff had only mild limits in this area because, in part, he consistently interacted well with clinicians, who generally noted that he was pleasant and cooperative. (R. 21.) Substantial evidence supports that explanation. Providers regularly noted that Plaintiff was cooperative (R. 370, 462, 909, 1122) and appropriate (R. 400, 600, 604, 615, 621, 631, 636, 641, 646, 651, 1137). On June 22, 2020, Plaintiff's case worker at Talbot House noted that he thanked her for her assistance. (R. 357.) On December 8, 2020, she noted that he was engaged. (R. 456.) Likewise, on May 26, 2021, Dr. Lester noted that Plaintiff was engaged, polite and friendly. (R. 1132, 1133.) On March 25, 2021, a case worker noted that Plaintiff had normal eye contact. (R. 869.) A doctor noted that Plaintiff provided excellent eye contact on May 25, 2021. (R. 1122.)

Third, the ALJ found that Plaintiff had only mild limits in his ability to maintain concentration, persistence, and pace. She wrote the following:

> Moreover, the claimant is only mildly restricted in his ability to maintain concentration, persistence, and pace. There is no evidence of prescribed medication needed to improve concentration. The claimant displayed no abnormal speech or thought processes consistent with disabling distractibility. He also demonstrated an ability maintain conversational exchanges with various examiners. However, his treating psychiatrist commonly noted signs of impaired concentration. Exhibit 12F/116. Notwithstanding, his psychiatrist noted he retained the ability to follow instructions and maintain awareness of current events.

(*Id*.) As this discussion demonstrates, the ALJ determined that Plaintiff had only mild limits in this area because, in part, Plaintiff was prescribed no medications to improve concentration. (*Id*.)

10

Substantial evidence supports that explanation—the Court has not discovered record evidence that Plaintiff was ever prescribed such medications.

In addition, the ALJ explained that Plaintiff had only mild limits in this area because, in part, Plaintiff displayed no abnormal speech that would be consistent with disabling distractibility. (R. 21.) Substantial evidence supports that explanation. On June 4, 2020, Plaintiff's psychiatrist, Dr. Pelnick, wrote that Plaintiff's speech had normal rate, tone, volume, and articulation. (R. 370.) On October 1, 2020, Dr. Pelnick found that although Plaintiff's tone was abnormal, his speech had normal rate, volume, latency, and articulation. (R. 462.) On February 4, 2021, Dr. Pelnick again found that Plaintiff's rate, tone, volume, latency, and articulation were all normal. (R. 909.) On March 25, 2021, a case worker noted that Plaintiff had normal speech. (R. 869.) A consultative examiner found that Plaintiff had clear speech on May 25, 2021. (R. 1122.)

The ALJ also explained that Plaintiff had no abnormal thought processes that would be consistent with disabling distractibility. (R. 21.) Substantial evidence supports that explanation. On June 4, 2020, Dr. Pelnick noted that Plaintiff's thoughts were organized, and he had normal thought content and reasoning. (R. 370, 371.) On October 1, 2020, and February 4, 2021, Dr. Pelnick found that although Plaintiff's abstract reasoning was abnormal, he still had normal thought content. (R. 463, 909.)

In addition, when determining that Plaintiff had only mild limits in this area, the ALJ accurately noted that Plaintiff was able to maintain conversational exchanges with various examiners. (R. 21.) As previously noted, the record reflects that Plaintiff was cooperative (R. 370, 462, 909, 1122), appropriate (R. 400, 600, 604, 615, 621, 631, 636, 641, 646, 651, 1137), able to assist with and contribute to conversations about his treatment plans (R. 345, 446, 857),

and provided information to providers (R. 1122, 1133). The ALJ further explained that although Plaintiff's psychiatrist noted that he had signs of impaired concentration, that provider also noted that Plaintiff could follow instructions and maintain awareness of current events. (R. 21.) That correctly describes that provider's clinical observations. On October 1, 2020, and February 4, 2021, Dr. Pelnick noted that Plaintiff had impaired concentration. (R. 463, 910.) But during those same appointments, Dr. Pelnick also determined that Plaintiff's attention was not impaired, he was able to follow instructions, and that his fund of knowledge was intact. (R. 463, 463, 910.)

Last, the ALJ found that Plaintiff had only mild limits in his ability to adapt or manage himself. The ALJ wrote as follows:

> There is no evidence of more than mild problems adapting or managing himself, which involves the ability to control behavior and maintain well-being in a work setting. Notably, the claimant consistently demonstrated an ability to work for 17 years prior to the alleged onset date of disability. At the hearing and during the consultative evaluation, the claimant indicated he maintains personal care, attends to household chores, prepares simple meals, and shops. In addition, the objective evidence in the record shows the claimant to generally present with adequate grooming and hygiene, and no observed issues with temper control. He also displayed no problems getting along well with providers and staff.

(*Id*.) As this discussion demonstrates, the ALJ determined that Plaintiff had only mild limits in this area because, in part, Plaintiff indicated at the June 17, 2021 hearing and during consultative examinations that he maintained personal care, attended to household chores, prepared simple meals, and shopped. (*Id*.) Substantial evidence supports that explanation. At the June 17, 2021 hearing, Plaintiff testified to the following: he showered and dressed himself, although physical issues with his hands caused him to drop his soap while showering and to keep his shoes tied in a permanent knot. (R. 95–96.) He walked daily for exercise and had lost weight. (R. 97.) He prepared simple meals such as sandwiches and used the microwave. (R. 94.) He also did laundry, took out garbage, washed dishes by hand with some difficulty due to physical problems with his

12

hands, and shopped for food, clothes, and personal items in stores or by using a delivery service. (*Id*.) In addition, and as the ALJ correctly noted, during a May 26, 2021 consultative examination, Plaintiff reported to Dr. Lester that he took care of his personal hygiene and fixed breakfast in the morning. (R. 1132.) Plaintiff also reported to Dr. Lester and his case worker at Talbot House that he had lost weight for health reasons. (R. 1134, 855.)

The ALJ additionally explained that Plaintiff had only mild limits in his ability to adapt or manage himself because, in part, record evidence reflected that he presented with adequate grooming and hygiene. (R. 21.) Substantial evidence supports that explanation. Providers routinely noted that Plaintiff was well dressed and well nourished. (R. 400, 600, 604, 615, 621, 631, 636, 641, 646, 651.) On October 16, 2020, it was noted that Plaintiff was "well appearing." (R. 471.) And on May 26, 2021, Dr. Lester noted that Plaintiff was clean and neatly dressed and that his clothing was appropriate for the weather. (R. 1133.)

When determining that Plaintiff had only mild limits in this area, the ALJ also noted that the record reflected no observed issues with temper control. (R. 21.) That accurately describes the record, which is devoid of any such observations. The ALJ also accurately noted that Plaintiff displayed no problems getting along with providers and staff. (*Id*.) As discussed above, providers regularly noted that Plaintiff was cooperative (R. 370, 462, 909, 1122), appropriate (R. 400, 600, 604, 615, 621, 631, 636, 641, 646, 651, 1137), expressed gratitude for help, (R. 357), and was engaged, polite and friendly. (R. 456, 1132, 1133.)

Plaintiff does not challenge these record-based reasons that the ALJ gave for finding that he had mild or no limits in these four areas. Instead, he points to other record evidence and argues that it demonstrates that his mental health impairments were severe. In particular, Plaintiff notes that Dr. Lester opined that he moderate limits in some of these four areas. But the Court

13

must uphold the ALJ's determination if it is supported by substantial evidence, even if other record evidence could support a different conclusion. *Blakley*, 581 F.3d at 406.

In any event, the ALJ discussed Dr. Lester's opinion at length, compared it to other record evidence including treatment notes from Dr. Pelnick, and determined that it was not persuasive. (R. 30–2.) For instance, the ALJ noted that Dr. Lester opined that Plaintiff had moderate impairments in his ability to interact with others but that this opinion was not supported by his own consultative examination notes. She wrote as follows:

> Dr. Lester opined the claimant was moderately impaired in his ability to interact with others. However, this finding is inconsistent with Dr. Lester's own reports. For example, the claimant reported that he knew all his previous customers and they were familiar with him. He indicated that he maintains a number of relationships, including with his mother, an older male friend and other family members, without any reports of significant conflict. The claimant also described his landlord as friendly and understanding. Exhibit 15F/4-5. The claimant talked about conflict with a prior supervisor that yelled at him; however, this does not support a finding that the claimant would have getting along with supervisors in general, but rather speaks more to his response to the unprofessional behavior of his supervisor at that time.

(R. 30–31.) The ALJ also noted that Dr. Lester opined that Plaintiff would be moderately to markedly impaired in his ability to adapt and manage himself but that this was inconsistent with other record evidence. She wrote as follows:

> Dr. Lester also opined the claimant would be moderately to markedly impaired in his ability to adapt and manage, although, he was maintained on his psychoactive medications. Notably, the claimant was taking the same psychiatric medication when he was working at substantial gainful activity levels. Further, the claimant lives alone, which is indicative of ability to adapt and manage. Treatment records from April, July, October, and December 2020, as well as January, February and March 2021, showed the claimant reported feeling healthy and well with no depression, sleep disturbances, anxiety, or suicidal thoughts. Exhibit 10F/34-36, 40, 45, 58, 64-69, 79-80, 85, 100-101. The claimant's PHQ-2/PHQ-9 score was zero and examinations describe the claimant as alert and appropriate, well dressed, and well-nourished with no acute distress, good judgment, and normal mood and affect. The claimant also displayed normal recent and remote memory, organized thought processes, and rational thought content. In January, May, June and October 2020, as well as February and April 2021, Dr. Pelnick documented that the claimant's

> bipolar I disorder was in partial remission. Exhibit 12F/92, 99, 108, 117, 132. In February 2021 Dr. Pelnick noted claimant's report to be psychiatrically and neurologically normal with a good mood. The claimant's PHQ and GAD-7 questionnaire scores were zero with the claimant denying being nervous, anxious, feeling down, depressed or hopeless, trouble falling asleep, feeling bad about himself and having trouble concentrating on things such as reading the newspaper or watching television. Exhibit 12F/112, 118-119.

(R. 31.) The ALJ also noted that Dr. Lester opined an absence limitation, but that it lacked support. She wrote as follows:

> Dr. Lester also opined the claimant would be absent from work approximately three days per month. Exhibit 16F/7. Dr. Lester provided no explanation to support the extreme degree of absenteeism opined.

(R. 32.) The ALJ accurately noted that Dr. Lester's opinions were vague. She wrote as follows:

> When assessing the claimant's functional limitations, Dr. Lester opinion is vague as he provides ranges such as mild to moderate and satisfactory to seriously limited, diminishing the persuasiveness. Exhibit 16F/5, 6.

(*Id.*) The ALJ further observed that Dr. Lester's opinion was based Plaintiff's self-reports and dated medical information from before the alleged onset date. She wrote as follows:

> Dr. Lester opined that the claimant has responded positively to treatment. Exhibit 16F/1. It also appears that Dr. Lester's opinion relied heavily on claimant's subjective reporting, as well as psychiatric hospitalizations that occurred over 17 years ago.

(*Id.*) In short, as these brief excerpts from the ALJ's three-page assessment of Dr. Lester's opinion illustrate, the ALJ provided a careful analysis of Dr. Lester's opinion before finding that it lacked persuasive value. Moreover, Plaintiff does not challenge, and the Court does not independently discern, an error in the ALJ's assessment of Dr. Lester's opinion.

For these reasons, the ALJ did not err when determining that Plaintiff had no more than mild limits in the paragraph B criteria, and that Plaintiff's mental health impairments were therefore not severe. Nevertheless, even if the ALJ had erred in that severity assessment at step

15

two, the ALJ discussed those non-severe mental health impairments when she assessed Plaintiff's RFC. Specifically, the ALJ noted that Plaintiff alleged that his mental health impairments resulted in disabling symptoms. The ALJ wrote as follows:

> The claimant also endorsed mental health symptoms further affecting his ability to function in the workplace. He reported use of Lithium and Aripiprazole, the generic form of Abilify, for his bipolar depression. The claimant believed that his medication seemed to help with most of his symptoms, noting that he was "in a bad way," without his prescriptions. Among other things, he testified to stabilized mood. Further, he denied adverse side effects of his medication.

(R. 22–23.) The ALJ, however, found that the symptoms of Plaintiff's non-severe mental health impairments did not result in work-related limitations. As part of that determination, she discussed and analyzed Dr. Lester's opinion as well as other evidence.

In short, substantial evidence supports the ALJ's severity determination at step two. And even if the ALJ had erred at step two, she expressly considered Plaintiff's non-severe impairments when assessing his RFC, and thus, any error would be harmless. *See Emard*, 953 F.3d at 851–52. Accordingly, Plaintiff's contention of error lacks merit.

## V.    CONCLUSION

For all the foregoing reasons, the Court **AFFIRMS** the Commissioner's non-disability determination and **OVERRULES** Plaintiff's Statement of Errors.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE

16